UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Chamber of Industry and Commerce Wuppertal-Solingen-Remscheid, a German trade association, | CASE NO.: |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL |
| Martha Stewart, an individual, | |
| Martha Stewart Living Omnimedia, Inc., a New York company, | |
| Emeril Lagasse, an individual, | |
| HSNi, LLC, a Delaware limited liability company doing business as Home Shopping Network, | |
| SED International Holdings, Inc., a Georgia corporation, | |
| Defendants. | |

Plaintiff, Chamber of Industry and Commerce Wuppertal – Solingen – Remscheid (hereinafter "CHAMBER" or "Plaintiff"), by and through the undersigned counsel, brings this Complaint against Defendants Martha Stewart, Martha Stewart Living Omnimedia, Inc., Emeril Lagasse, HSNi, LLC d/b/a Home Shopping Network and SED International Holdings, Inc., individually, jointly and severally (hereafter collectively referred to as the "Defendants"), and allege as follows:

**PARTIES**

1.      CHAMBER is a German trade association that is the owner of the certification mark "SOLINGEN" in connection with high quality German products.  The Chamber has a principal place of business at Heinrich-Kamp-Platz 2, Wuppertal, Germany 42103.

2.    Defendant Martha Stewart (hereinafter "STEWART") is upon information and belief, a resident of either Connecticut or New York, is an officer of Defendant Martha Stewart Living Omnimedia, Inc., and is the primary controlling force behind Defendant Martha Stewart Living Omnimedia, Inc. Upon information and belief, Defendant STEWART dominates the activity of Defendant Martha Stewart Living Omnimedia, Inc., and personally directed and orchestrated the counterfeiting activity, trademark infringement, and unfair competition described herein.

3.    Defendant Martha Stewart Living Omnimedia, Inc. (hereinafter "MSLO"), is, upon information and belief, a Delaware Corporation with offices around the United States and with a principle place of business at 20 West 43rd Street, New York, NY.  Upon information and belief, MSLO signed an agreement with Emeril Lagasse and his various companies assigning the EMERIL brand to MSLO for fifty million dollars ($50,000,000).

4.    Defendant Emeril Lagasse (hereinafter "LAGASSE") is, upon information and belief, an individual who does business under the assumed name "EMERIL," resides in a state other than Florida, and has a principal place of business at 829 St. Charles Ave, New Orleans, Louisiana 70130.   Upon information and belief, LAGASSE is a celebrity chef, restaurateur, cookbook author, and television personality.  Upon information and belief, LAGASSE maintains websites at http://EMERILS.com and http://EMERILware.com.

5.    Defendant HSNi, LLC, a limited liability company d/b/a Home Shopping Network (hereinafter "HSN"), is, upon information and belief,  incorporated under the laws of the state of Florida and has a principle place of business at 1 HSN Drive, St. Petersburg, Florida. HSN is a $3 billion interactive multi-channel retailer with direct-to-consumer expertise. HSN offers innovative, differentiated retail experience on TV, online, via mobile, in catalogs, and in

brick-and-mortar stores in Florida.  HSN is known to sell and offer for sale assorted products and name brands, and broadcasts live 24 hours a day, seven days a week, 364 days a year, reaching approximately ninety-six million (96,000,000) homes.    Upon information and belief, HSN sponsors and lists EMERIL brands on the HSN website, TV shows, and other retail outlets.

6.      Upon information and belief, HSN advertises, distributes, promotes, offers, for sale and sells various knife products bearing counterfeits of the CHAMBER's federally registered certification mark, in this judicial district and elsewhere through the Internet website www.hsn.com (the "Website") and through television channels, Comcast, DirectTV, Dish Network, AT&T U-Verse, as well as through telephone numbers posted on the television shows.

7.      SED International Holdings, Inc., (hereafter referred to as "SED"), is, upon information and belief, a Georgia corporation with offices at 1729 NW 84th Avenue, Miami, Florida 33126, is a multinational distributor of products, and is the exclusive supplier of the EMERIL and EMERILWARE products.  Upon information and belief, Defendant MSLO signed a licensing agreement with SED to give SED the exclusive distribution rights for North America to LAGASSE's cutlery products branded with the EMERIL mark.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this dispute arises under the laws of the United States.  This Court has jurisdiction pursuant to 28 U.S.C. § 1338 (a) and (b), in that this dispute arises under the Lanham Act.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity among the parties and the amount in controversy exceeds $75,000.

9.      This action arises under the Trademark Laws of the United States, included particularly, Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.  Jurisdiction is

conferred on this Court by 15 U.S.C. Section 1121(a), by 28 U.S.C. Sections 1331 and 1338(a), in that his case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, et seq., and by principles of pendent jurisdiction.

10. The Court has personal jurisdiction over Defendants because Defendants each conduct business in this District and distribute products within the State of Florida. Defendants have further purposefully availed themselves of the opportunity to conduct commercial activities in this forum, and this Complaint arises out of those activities. The publication and sale of the infringing products in Florida is causing an ongoing injury to CHAMBER. Moreover, personal jurisdiction is proper over Defendants HSN and SED in Florida because HSN's principal place of business is in Florida and SED has offices in Florida.

11. Venue is proper in this District under 28 U.S.C. §§ 1391 as Defendants have sold or offered for sale infringing products in this Judicial District, continue to infringe CHAMBER's federally registered certification mark, and conduct regular business in this Judicial District.

## BACKGROUND OF THE SOLINGEN MARK

12. The origin of the SOLINGEN trade name goes back to approximately 1853.

13. SOLINGEN is a brand name representative of the finest quality of Germany cutlery and other German products. Manufactured in Solingen, Germany, cutlery sold under the brand name SOLINGEN certifies that the goods sold under that brand are of a certain origin and comply with extremely high and specific standards of manufacture.

14. This cutlery includes knives and blades of all kinds and has been manufactured in Solingen for many centuries. The original products were mainly swords and daggers, but today's products are wide-ranging. The products made in Solingen are of a particularly high quality with high-grade materials, made by qualified workers and known for excellence in craftsmanship.

The products are renowned around the world and are appreciated for their high quality.

15.     Protection under the name SOLINGEN is provided by special legislation in Germany, referred to as the "Solingen Decree," which requires that goods marked with "SOLINGEN" meet strict conditions.  The Solingen Decree is codified in Section 137 of the law on trademarks of 25 October 1994 (German law Gazette 1994, p. 3082).  The Federal Ministry of Justice issued the Solingen Decree in agreement with the Federal Ministry of Economics, of Food, Agriculture and Forestry and of Health.  (See attached Exhibit "A").  The CHAMBER's brochure further describes the background of the SOLINGEN certification mark (herein after referred to as the "SOLINGEN Certification Mark"). (See attached Exhibit "B").

16.     According to the Solingen Decree, anyone selling cutlery and related goods that is not, in fact, manufactured and made in Solingen, must not create the impression among consumers that the products are made in Solingen.

17.     The SOLINGEN Certification Mark is federally registered, Registration No. 0987576, and has become incontestable.   A true and correct copy of the Certificate of Registration for the "SOLINGEN" Certification Mark is attached hereto as Exhibit "C."  The SOLINGEN Certification Mark was registered in the United States in 1974 with a first use date going back over one-hundred and twenty years ago, to 1853. *Id*.

18.     The SOLINGEN Certification Mark registered on the Principal Register specifies that "[t]he mark certifies both regional origin and also that the goods comply with statutory quality standards relating to raw materials and methods of manufacture." *Id*.

19.     The SOLINGEN Certification Mark  is valid, subsisting, in full force and effect, has become incontestable pursuant to 15 U.S.C. § 1065, and serves as conclusive evidence of CHAMBER's ownership of the mark and exclusive right to use the mark and allow others to use

the mark in commerce in connection with the goods identified in the registration.

20.     The SOLINGEN Certification Mark is also registered at the U.S. Customs and Border Protection on January 14, 2010, and assigned Agency Tracking ID No. 06003094449.  A true correct copy of the U.S. Customs and Border Protection Application is attached hereto as Exhibit "D."

21.     The name "Solingen" is a description of a geographical origin of products.  This geographical origin is why the SOLINGEN Certification Mark is an indicator that certifies regional origin and certifies that the goods comply with statutory quality standards relating to the raw materials and high quality of manufacture.  SOLINGEN brand manufacturers who follow the certification requirements of the Solingen Decree are permitted to use the SOLINGEN Certification Mark on their products.

22.     The SOLINGEN Certification Mark enables the consumer to trace the products back to the manufacturer and to the origin of manufacture.  See attached Composite Exhibit "E" which is an example of how one manufacturer from Germany displays the SOLINGEN Certification Mark on its goods.

23.     The SOLINGEN Certification Mark has achieved a high degree of consumer recognition and is widely recognized indicator of high-quality craftsmanship and manufacture of cutlery products that originate in Solingen, Germany.

24.     The SOLINGEN Certification Mark is only used on goods manufactured in the Solingen industrial area which includes the urban commune of Solingen and the area of the town of Haan which is in the district of Mettmann.    The Solingen Decree does not permit the SOLINGEN Certification mark to be affixed to goods that were processed, finished or manufactured outside of the Solingen industrial area.

25.     The registration of the SOLINGEN Certification Mark constitutes *prima facie* evidence of its validity.

26.     The registration also provides constructive notice to Defendants of CHAMBER's ownership and rights to the SOLINGEN Certification Mark.

27.     A list of the companies who produce cutting equipment in the Solingen industrial area and reach the standards of production was submitted in connection with the Customs Border Protection Application for the SOLINGEN Certification Mark referred to in the above paragraph and is attached hereto as Exhibit "F."

28.     The SOLINGEN Certification Mark is associated with high-quality goods known to be manufactured in the Solingen industrial area.  CHAMBER has enforced the SOLINGEN Certification Mark and the Customs Border Control has seized goods falsely bearing the SOLINGEN name for goods manufactured outside Solingen, Germany. A true correct copy of the U.S. Customs and Border Protection correspondence relating to one such seizure is attached hereto as Exhibit "G."

**Defendants' Counterfeiting and Infringing Activities**

29.     Sometime in the late Spring of 2012, CHAMBER was made aware and began investigating information that some types of cutlery products were being distributed through HSN marked with the SOLINGEN Certification Mark but also marked "CHINA."

30.     CHAMBER investigated this matter and thereafter determined that Defendants, individually and/or together, are selling, offering for sale, distributing, promoting and advertising different types of cutlery products in interstate commerce bearing counterfeits and infringement of the SOLINGEN Certification Mark. (hereinafter referred to as the "Counterfeit Products")

31.     Defendants are not entitled to use the SOLINGEN Certification Mark in

connection with designing, manufacturing, advertising, promoting, distributing, publicly displaying, offering for sale, and/or selling the Counterfeit Products as the Counterfeit Products are made in China and do not comply with the Solingen Decree.

32.     The Counterfeit Products, offered in many different types, are marked with the signature trademark "EMERILS," and "Solingen, Germany" on one side of the blade and on the other side they are marked "CHINA."   The spurious mark and designation used by Defendants in interstate commerce are identical with, or substantially indistinguishable from, the SOLINGEN Certification Mark on goods covered by the SOLINGEN Certification Mark.

33.     The Counterfeit Products are not made in Germany and are falsely marked "Solingen, Germany." Upon information and belief, the Counterfeit Products are made in China and shipped from China to the United States either directly or indirectly from China.

34.      HSN is a marketing company that regularly promotes and sells EMERIL brand products (now owned by MSLO and controlled by STEWART), including various types of cutlery that is the subject of this Complaint.  HSN promotes and sells nationally, through television "infomercials" on HSN, as well as advertising and sales on the Internet and by telephone.  HSN is currently promoting, advertising, offering for sale, and selling the Counterfeit Products through various different mediums, including but not limited to television, Internet, and phone sales.

35.     LAGASSE appears on the HSN website through playable video clips as well as in nationally televised "infomercials" sponsored and produced by HSN to promote and sell the Counterfeit Products in addition to putting his personal name on the Counterfeit Products.

36.     MSLO who, upon information and belief, and at all relevant times, was assigned and is the current owner of the EMERIL brand, was and is responsible and in charge of the

EMERIL brand, which includes the licensing, advertising, promotion, distribution, and sales of the Counterfeit Products.

37.     STEWART, who, upon information and belief, is the primary controlling force behind MSLO and the owner of the EMERIL brand, was responsible for the licensing, advertising, promotion, and sales of the Counterfeit Products.

38.     SED is, upon information and belief, the distributor of the Counterfeit Products to or on behalf of HSN and possibly others.

39.     Defendants individually and together are distributing, advertising, promoting, offering for sale, and selling cutlery products that falsely misrepresent to the public, including consumers in Florida, that the EMERIL brand products are made in Solingen, Germany, and include steel forged in Solingen, Germany, and Defendants have falsely marked the cutlery products with the SOLINGEN Certification Mark.

40.     Defendants seek to compete unfairly with German brand manufacturers who properly display the Solingen Certification Mark as a geographic indicator of the source of their goods.  The use by Defendants of the SOLINGEN Certification Mark on Defendants' products is likely to cause consumers, the public, and the trade to erroneously believe that the goods sold by Defendants emanate or originate and are manufactured in Solingen, Germany, or that said items are authorized, sponsored, or approved by the CHAMBER, even though they are not.  This confusion causes irreparable harm to CHAMBER and weakens the distinctive quality of the SOLINGEN Certification Mark.

41.     By using counterfeits of the SOLINGEN Certification Mark on Defendants' goods and by infringing the SOLINGEN Certification Mark, Defendants are trading on the goodwill and reputation of CHAMBER and the brand owners who properly display the Solingen

Certification Mark and are creating the false impression that Defendants' goods are products legitimately made in Solingen, Germany, when they are not.

42.     Defendants have been unjustly enriched by illegally using and misappropriating CHAMBER's intellectual property for Defendants' own financial gain.   Furthermore, Defendants have unfairly benefited and profited from CHAMBER's outstanding reputation for high-quality products.

43.     Defendants have disparaged and tarnished the SOLINGEN Certification Mark and the products of brand manufacturers who properly use the SOLINGEN Certification Mark by creating a false association that Defendants' Counterfeit Products are genuine products made in Solingen, Germany.

44.     The nature and quality of the products sold by Defendants bearing counterfeits of the SOLINGEN Certification Marks are controlled by Defendants, individually or jointly.

### Poor Quality of the Counterfeit Products

45.     On or about May 21, 2012, upon information and belief, a consumer who purchased a 5-inch Santouku Knife bearing a counterfeit of the SOLINGEN Certification Mark wrote a review stating that she was misled by the HSN video as follows:

> I'm disappointed in the video when Emeril stated that the Santouku knife was made in Germany.  This is the main reason I made the purchase. Come to find out it is made in China. That is terrible when a top chef lies to you on tv. Wish I would have known. Emeril cannot be trusted with what he advertises.

A true and correct copy of the consumer review is attached as Exhibit "H."  Despite this complaint to HSN, HSN and the other Defendants continued their infringing conduct and selling the Counterfeit Products.

46.     In July and August of 2012, upon information and belief, other consumers who

purchased the infringing Counterfeit Products, complained that the knives were rusting and were breaking in half.  A true and correct copy of other consumer reviews is attached as Exhibit "I." Similarly, despite these complaints to HSN about the poor quality of the Counterfeit Products, upon information and belief, HSN and the other Defendants continued the infringing conduct and selling the Counterfeit Products.

### Defendants Willful and Deliberate Infringement and Misappropriation of the SOLINGEN Certification Mark

47.    Upon information and belief, Defendants, acting individually and/or together, have known of the SOLINGEN brand and, in particular, the SOLINGEN Certification Mark.

48.    Defendants have materially contributed to and facilitated the above-described infringements of the SOLINGEN Certification Mark by having permitted and continuing to permit the advertising, promotion, distribution, offering for sale, and the sale of the Counterfeit Products on HSN (and possibly other places) notwithstanding (i) Defendants' actual knowledge of the advertising, promotion, distribution, offering for sale, and the sale of the infringing items, (ii) Defendants' constructive knowledge of the advertising, promotion, distribution, offering for sale, and the sale of the infringing items, or, alternatively, (iii) Defendants' willful blindness to the advertising, promotion, distribution, offering for sale, and the sale of the infringing items.

49.    In particular, Defendant LAGASSE has, at all relevant times, known of the SOLINGEN Certification Mark and brand and that use of the mark signifies that the goods or products originate in Solingen, Germany, and stand for premium and exceptional cutlery.

50.    Sometime in 2002, Defendant LAGASSE, either individually or through his business entities, entered an agreement to produce a line of co-branded products with a German cutlery company named Wüsthof Dreizackwerk KG (hereinafter "WÜSTHOF").  The products were to bear the EMERIL signature trademark as well as both the WÜSTHOF trademark and the

SOLINGEN Certification Mark -- designating the high quality and location of manufacture of the co-branded products (hereinafter referred to as the "EMERIL-WÜSTHOF cutlery").   The EMERIL-WÜSTHOF cutlery was, upon information and belief, sold under LAGASSE's brand "EMERILWARE." See attached Exhibits "J"

51.     WÜSTHOF is a well-known and famous family-owned company in Germany with a factory in Solingen, Germany.  WÜSTHOF properly uses the SOLINGEN Certification Mark on their premium and exceptional cutlery, as their products are manufactured in the Solingen industrial area and meet the requirements of the Solingen Decree.  See, e.g,. Exhibit "F".

52.     In   a   brochure   advertising   the   "EMERIL-Wüstof   cutlery",   it   states "EMERILWARE KNIVES The only knives that make EMERIL say, "BAM!""  See attached Exhibit "J." The same brochure discusses the features of the knives clearly noting the history and that the knives are made in Solingen, Germany, the "Cutlery Capital." *Id.*  Importantly, the brochure notes in connection with the EMERIL trademark that "EMERIL wouldn't  put his name on just *any* knife. Wüsthof is the brand he's always used and loved. Now you can too." *Id.*

53.     LAGASSE's knowledge of the SOLINGEN Certification Mark was documented in articles posted on www.emerils.com.  In one post at EMERILS.COM on August 7, 2002, an article discusses the "EMERILWARE KNIVES" and that LAGASSE and WÜSTHOF have joined   forces   to   sell   knives   were   "[m]ade   in   Solingen,   Germany,   Wüsthof-Trident's Headquarters and manufacturing base since the company's founding more than 175 years ago." See attached Composite Exhibit "K."  In a post at EMERILS.COM on March 3, 2005, another article discusses that WÜSTHOF dedicates a Solingen Facility to the Craftsmanship of Growing Collection "Leading premium company Wüsthof-Trident, in partnership with America's hottest

chef and TV personality Emeril Lagasse, introduce a newly enhanced and expanded line of EMERILWARE KNIVES. Expertly crafted in Solingen, Germany at a new Wüsthof facility dedicated solely to manufacturing EMERILWARE KNIVES." *Id.*  In yet another post at EMERILS.COM on March 16, 2006, an article again mentions that the knives made in the partnership between LAGASSE and WÜSTHOF, which started in 2002, are "[e]xpertly crafted in Solingen, Germany" and "[i]n keeping with all other Wüsof high-quality cutlery, EMERILWARE KNIVES are crafted from exclusive high-carbon stain-resistant alloy that is engineered to enhance edge-retention and facilitate re-sharpening." *Id.*  "Familiar with the premium cutlery brand since his early days of training to be a chef, Emeril adds, 'Wüsthof knives are exceptional, and they continue to be a key ingredient in my success cooking at home with my family, in my restaurants, and on television.'" *Id.*

54.     Defendant STEWART and MSLO have, at all relevant times, known of the SOLINGEN Certification Mark and that use of the SOLINGEN Certification Mark signifies that the goods or products originate in Solingen, Germany, and stand for premium and exceptional cutlery.

55.     Specifically, STEWART places videos available for viewing on her company's website, www.marthastewart.com, that demonstrate STEWART's actual knowledge of the SOLINGEN Certification Mark.  In one such video titled "Wusthof Knives from Germany" with a co-title "Martha Stewart features Wusthof Knives made from Solingen, Germany," STEWART hosts a representative of WÜSTHOF.  STEWART and the WÜSTHOF representative discuss in this video that WÜSTHOF knives are made in Solingen, Germany, which has for centuries been recognized as the center of cutlery manufacturing.  STEWART states on the video that "I have been using these knives forever" and that she still had her original set from when she got

married.  STEWART further states that her father taught her that to do the job right, you have to have the right tool and it has been a motto of hers on her show.

56.      In another video available for viewing on www.marthastewart.com, STEWART and LAGASSE discuss working together with WÜSTHOF and the new line of cutlery offered with WÜSTHOF and LAGASSE.  The cutlery was specified by STEWART as a "must have."

57.      STEWART, LAGASSE and MSLO (assignee of the EMERIL brand) were aware of the SOLINGEN Certification Mark for many years, well before the counterfeit and infringing activity mentioned herein occurred.

58.      Notwithstanding the fact that the Counterfeit Products are marked "Solingen, Germany" on one side of the product and "China" on the other side, all Defendants hold out to the public that the Counterfeit Products are certified as being made in Solingen, Germany, when in fact they are made in China.  All Defendants are charged with direct or constructive knowledge of the SOLINGEN Certification Mark (or are willfully blind to the SOLINGEN Certification Mark) in their promotion, advertising, distribution, offering for sale, and sale of the Counterfeit Products.

59.      Despite actual knowledge of the SOLINGEN Certification Mark and brand, Defendants began selling, offering for sale, distributing, promoting and advertising cutlery products in interstate commerce bearing counterfeits and infringement of the SOLINGEN Certification Mark.

60.      Upon information and belief, Defendants have acted with reckless disregard for CHAMBER's rights and/or were willfully blind in connection with their unlawful activities.  Upon information and belief, Defendants have willfully and maliciously engaged in their counterfeiting and infringing activities.  Therefore this case constitutes an exceptional case under

15 U.S.C. § 1117(a) and/or a case of intentional counterfeiting under 15 U.S.C. § 1117(b).

61.     CHAMBER has suffered irreparable harm and damages as a result of the acts of Defendants in an amount thus far not determined.   The injuries and damages sustained by CHAMBER have been directly and proximately caused by Defendants' wrongful advertisement, promotion, distribution, offers of sale, and sale of their goods infringing and counterfeiting the SOLINGEN Certification Mark.

62.     CHAMBER has no adequate remedy at law.

63.     Defendants' wrongful acts will continue unless enjoined by the Court. Accordingly, Defendants must be restrained and enjoined from any further counterfeiting or infringement of the SOLINGEN Certification Mark.

### FIRST CLAIM FOR RELIEF

**WILLFUL INFRINGEMENT OF THE CHAMBER'S SOLINGEN
CERTIFICATION MARK
Trademark Counterfeiting against Defendants under 15 U.S.C. § 1114**

64.     CHAMBER hereby incorporates by reference the allegations set forth above.

65.     Defendants have used the SOLINGEN Certification Mark in commerce in association with the sale, offering for sale, distribution, and/or advertising of counterfeit goods without the approval or consent of the CHAMBER.

66.     The SOLINGEN name used by Defendants is a federally registered certification mark owned by the CHAMBER.

67.     Defendants have used the SOLINGEN Certification Mark on the Counterfeit Products sold, offered for sale, distributed, and/or advertised, knowing that the goods are not made in Solingen, Germany and that the goods are made in China or other places outside of

Solingen, Germany.

68.     Defendants' infringing use of the SOLINGEN Certification Mark on and in connection with Defendants' advertisement, promotion, sale, offering for sale, and distribution of cutlery through the World Wide Web and in Television infomercials constitutes Defendants' use of the SOLINGEN Certification Mark in commerce.

69.     Defendants' infringing use of the SOLINGEN Certification Mark, as set forth above, is likely to: (a) cause confusion, mistake, and deception; (b) cause the public to believe that Defendants' cutlery are the same as the cutlery properly branded with the SOLINGEN Certification Mark and/or that Defendants' Counterfeit Products are manufactured in Solingen, Germany; and (c) result in Defendants unfairly benefiting from the reputation of the SOLINGEN Certification Mark, which serves as a geographical indicator that goods marked SOLINGEN with the SOLINGEN Certification Mark are manufactured in Solingen, Germany, and the substantial good will represented thereby.

70.     The deliberate and willful counterfeiting and use of the SOLINGEN Certification Mark manifests Defendants' clear intent to deceive others into believing that the Counterfeit Products are, in fact made in Solingen, Germany.

71.     Consumers have been confused by Defendants' use of the SOLINGEN Certification Mark. For example, consumers addressed a review posted on the www.hsn.com website stating that the main reason the purchase was made was because "Emeril stated that the Santouku knife was made in Germany…Come to find out it was made in China." See Exhibit "H."

72.     Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, have caused and will continue to cause

substantial irreparable damage to the CHAMBER, and will result in Defendants' unjust enrichment and unlawful derivation of profits and gains.

73.     Defendants' wrongful acts of willful and malicious counterfeiting will continue unless enjoined by this Court and the exact nature and extent of which cannot be ascertained at this time, and for which no adequate remedy at law is available.

74.     CHAMBER cannot control the quality of the goods provided by Defendants. Because of the likelihood of confusion as to the source of Defendants' goods, CHAMBER's valuable goodwill in the SOLINGEN Certification Mark is at the mercy of Defendants.

75.     CHAMBER's case is exceptional.

76.     By reason of the foregoing, the Defendants are liable to CHAMBER for statutory damages in the amount of $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham act, **or**, at CHAMBER's election, an amount representing three (3) times CHAMBER's damages and/or Defendants' illicit profits, plus reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

### SECOND CLAIM FOR RELIEF

### UNFAIR COMPETITION, FALSE ADVERTISING, AND FALSE DESIGNATION OF ORIGIN AGAINST DEFENDANTS UNDER 15 U.S.C. § 1125(a)

77.     CHAMBER hereby incorporates by reference the allegations set forth above in paragraphs 1 to 63.

78.     In connection with Defendants' advertising, promotion, distribution, offers for sales, and sales of their goods, Defendants have used in commerce, and continue to use in commerce, the SOLINGEN Certification Mark.

79. In connection with Defendants' advertisement, promotion, distribution, offers for sales, and sales of their goods, Defendants have affixed, applied, and used false designations of origin and false and misleading descriptions and representations including the SOLINGEN Certification Mark, which falsely describes the origin, sponsorship, or association of the Counterfeit Products sold by Defendants.

80. Defendants have used the SOLINGEN Certification Mark with full knowledge of the falsity of such designations of origin, descriptions, and representations, especially where the counterfeiting and infringing goods are marked "CHINA" on one side and "SOLINGEN" or "SOLINGEN, GERMANY" on the other side next to the "EMERIL" signature trademark.

81. Defendants have used the term "German Forged" on the website and used the SOLINGEN Certification Mark on the infringing Counterfeit Products in conjunction with the marking of "CHINA" on the goods, with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon the reputation of the good will associated with use of the SOLINGEN Certification Mark, and to improperly appropriate themselves the valuable trademark rights of those who properly use the Solingen Certification Mark.

82. Defendants are not affiliated with, connected with, endorsed by, or sponsored by CHAMBER.

83. Defendants conduct has disparaged CHAMBER and the brand manufacturers who legitimately affix the SOLINGEN Certification Mark to their wide ranging and various types of goods and/or packaging.

84. Defendants' acts constitute the willful and malicious trademark use in commerce of false designation of origin and false and/or misleading descriptions or representations, tending to falsely and misleadingly describe and/or represent Defendants' products as those that are

manufactured in Solingen, Germany in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85. By reason of the foregoing, the Defendants are liable to CHAMBER for an amount representing three (3) times CHAMBER's damage and/or Defendants' illicit profits and reasonable attorneys' fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order Defendants to render an accounting to CHAMBER of all Defendants' infringing uses of the SOLINGEN Certification Mark;

(2) Order Defendants to render an accounting to CHAMBER of all Defendants' sales and profits gained from the advertising, promotion, distribution, offers for sales, and/or sales of any products, bearing or sold in connection with Defendants' use of the SOLINGEN Certification Mark;

(3) Requiring Defendants to pay CHAMBER such damages as CHAMBER has sustained as a consequence of Defendants' infringement of the SOLINGEN Certification Mark and unfair competition and all account for gains, profits and advantages derived by Defendants from the sale of their infringing merchandise bearing the SOLINGEN Certification Mark and that the award to CHAMBER be trebled as provided under 15 U.S.C. § 1117; alternatively, that CHAMBER be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $2,000,000 for each time that the Defendants have willfully counterfeited and infringed the SOLINGEN Certification Mark.

(4) Ordering that CHAMBER recover costs of this action, together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

(5)     Ordering that CHAMBER be awarded punitive damages and attorneys' fees for Defendants' willful, malicious and bad faith conduct.

(6)     Enter an injunction ordering that Defendants, their agents, servants, employees, distributors, and all other persons in privity or acting in concert with them be enjoined and restrained from:

      (a)     using any reproduction, counterfeit, or copy of the SOLINGEN Certification Mark;

      (b)     engaging in any course of conduct likely to cause confusion, deception or mistake, or weaken the distinctive quality of the SOLINGEN Certification Mark;

      (c)     use of a false description or representation including the word "Solingen" tending to falsely describe or represent Defendants' Counterfeit Products as those being made in Solingen or sponsored by or associate with the CHAMBER and from offering such goods in commerce;

      (d)     further infringing the SOLINGEN Certification Mark by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying, or otherwise disposing of any products bearing any reproduction, counterfeit, copy or colorable imitation of the SOLINGEN Certification Mark;

      (e)     using any simulation, reproduction, counterfeit, copy or colorable imitation of the SOLINGEN Certification Mark in connection with promotion, advertisement, display, sale, manufacture, production, circulation, or distribution of any Counterfeit Products;

      (f)     making any statement or representation whatsoever, or using any false designation or origin or false description, or performing any act, which can or is likely to

lead the trade or public, or individual members thereof, to believe that any products advertised, manufactured, distributed, sold or offered for sale, or rented by Defendants are in any way associated or connected with CHAMBER or the SOLINGEN Certification Mark;

(g)    secretly destroying, altering, removing, or otherwise dealing with the Counterfeit Products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all Counterfeit Products that use the word "Solingen" and/or infringe the SOLINGEN Certification Mark; and

(h)    effecting assignments or transfers, forming new entities or associations utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above;

(7)    Directing that Defendants within thirty (30) days of Judgment, file and serve on CHAMBER a sworn statement setting forth in detail the form in which Defendants have complied with this injunction;

(8)    Directing Defendants to deliver up for destruction to CHAMBER all Counterfeit Products and advertisements in their possession or under their control bearing the word "Solingen" or the SOLINGEN Certification Mark or any simulation, reproduction, counterfeit, copy or colorable imitation thereof;

(9)    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products advertised, manufactured, sold or otherwise circulated or promoted by Defendants are related in any way to CHAMBER or the SOLINGEN Certification Mark; and

(10)    Award such other and further relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a jury trial.

DATED this 11th day of September, 2012.

Respectfully submitted,

MAYBACK & HOFFMAN, P.A.

By**:  s/Catherine F Hoffman_____**
  Catherine F. Hoffman, Esq.
  Florida Bar No. 828459
  5722 S. Flamingo Rd. #232
  Fort Lauderdale, Florida  33330
  Telephone: (954) 704-1599
  Facsimile: (954) 704-1588
  Email:  choffman@mayback.com

  Gregory L. Mayback, Esq.
  Florida Bar No. 964247
  5722 S. Flamingo Rd. #232
  Fort Lauderdale, Florida  33330
  Telephone: (954) 704-1599
  Facsimile: (954) 704-1588
  Email:  greg@mayback.com

  *Attorneys for Plaintiff, Chamber of Industry and*
  *Commerce Wuppertal – Solingen – Remscheid*